[Civ. No. 9991. Third Dist. Feb. 14, 1961.]

DONALD J. McMANN et al., Respondents, v. HERMAN
WADLER et al., Appellants.

Robert R. Elledge for Appellants.

Nathaniel S. Colley for Respondents.

WARNE, J. pro tem.*—Defendants appeal from judgments entered against them. The jury returned a verdict in favor of each plaintiff for $10,000 general damages and $10,000 punitive damages. Upon motion for a new trial the trial court ordered that a new trial would be granted unless respondent McMann consented to remit $7,000 of the amount awarded him as his general damage and Misuraca remit $5,000 of the amount awarded him as his general damage. Each plaintiff, in writing, remitted the amounts stated and the motion for a new trial was therefore denied.

Western Dairymen's Association is a nonprofit corporation whose membership is composed of dairymen operating primarily in the Sacramento and San Joaquin Valleys. Appellant Western Farms, Inc., is engaged in the dairy industry and qualifies for membership in the Western Dairymen's Association. Appellant Herman Wadler was the manager of Western Farms, Inc. Although Wadler was not a member of the Western Dairymen's Association in his individual capacity, he did participate in the organization by virtue of his representation of Western Farms, Inc., and was elected a director of the Dairymen's Association. Respondent McMann served as manager of Western Dairymen's Association from 1955 to the summer of 1957, during which time the respondent Misuraca served as president of the Dairymen's Association.

It appears that there was a difference of opinion between Wadler and respondents as to how the affairs of the Western Dairymen's Association should be handled, and as a result

*Assigned by Chairman of Judicial Council.

thereof Wadler's contact with the Western Dairymen's Association was controversial.

On several occasions at various unit meetings of the Western Dairymen's Association throughout the valley and at several board meetings which Wadler attended there was turmoil, and on at least two occasions his conduct was so violent that he was arrested, tried and convicted of disturbing the peace. At various unit or branch meetings of the association throughout the Sacramento-San Joaquin Valleys, he charged that respondents were thieves. In addition, on or about January 14, 1957, appellant Wadler wrote a letter to each member of the Dixon-Solano Unit of the Western Dairymen's Association stating that respondent Misuraca had instructed a previous attorney of the association to give perjured testimony in a court proceeding and accusing Misuraca of sanctioning criminal conduct and ''Ku Klux Klan type secrecy.'' In January of 1957 Wadler addressed and mailed a letter to the ''Honorable Superior Courts of Merced County,'' in which he asserted that the former attorney of the association had conspired with officers of the association to ''loot the association treasury.'' It appears that appellants intended that it should be understood that the respondents were among those who had so conspired. Appellant Wadler testified that when he sent the letter he was acting pursuant to his ''inherent right to expose these people.''

As a result of Wadler's conduct in relation to Western Dairymen's Association, a formal charge was filed against Western Farms, Inc., and Wadler, under the bylaws of the association, for the purpose of determining whether or not the membership of Western Farms, Inc., should be terminated. The charge was that Wadler, as agent and representative of Western Farms, Inc., had engaged in a course of conduct which had disturbed the dignity and harmony of the association, impairing the good name thereof, and which would likely endanger the welfare, best interests and existence of the association. These charges were heard at a meeting of the board of directors of Western Dairymen's Association, held at Elk Grove, California, on April 13, 1957. At that meeting 17 members of the board, the association's attorney, and a deputy sheriff of Sacramento County were in attendance. The complaint alleged the slanderous utterance to have been made, willfully and maliciously, on the occasion of this meeting. It was also alleged that Wadler, at all times on the

occasion, was acting as the agent of Western Farms, Inc., within the course and scope of his authority.

The words complained of are as follows: "Because I am an individual, and when I find a thief, I have the right to expose him at any time and McMANN is the lowest thief that I've seen. He is like the man who would steal pennies from a blind man's cup and so are you, [alleged to have been directed towards the respondent Misuraca] . . ."

However, a transcription of a tape recording of the proceedings also shows, in part, the following:

"Colley: May I ask a question on behalf of the association, Mr. Wadler, in order that the record might be clear? What you are saying is that people have stolen money because of the operating under illegal bylaws or do you mean that they have taken money irrespective of any kind of bylaws? . . .

"Wadler: I'm not making a charge. May I go further to clear the question you are making, Mr. Colley. I'm not charging McMann with,—I am making this specific, that he— dues came into the office that he did not enter among the records and put them in his pocket. He has entered them on the records. He deposited them but the checks Misuraca and McMann had countersign. All the records are there. They have been spent illegally. The money has all been spent illegally.

"Colley: And is that because the bylaws are illegal?

"Wadler: Yes.

"Colley: I see, but not because anybody has stolen the money and gone West with it. You don't mean that?

"Wadler: No. You know that."

Section 47 of the Civil Code in part provides as follows:

"A privileged publication or broadcast is one made——

"1. In the proper discharge of an official duty.

"2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law; . . .

"3. In a communication, without malice, to a person interested therein, (1) by one who is also interested, . . ."

Appellants first contend that a meeting of the board of directors of a nonprofit corporation to remove a director is an "official proceeding authorized by law" under section 47, subsection 2(3) of the Civil Code, and therefore that the communication in issue here was absolutely privileged. We feel that this contention is without merit. █ Surely it was not the legislative intent to grant an absolute privilege for every defamatory utterance made in every lawful meeting.

We are persuaded that the "official proceeding" embraced in the purview of the statute is that which resembles judicial and legislative proceedings, such as transactions of administrative boards and quasi-judicial and quasi-legislative proceedings, not a meeting of a board of directors of a nonprofit corporation or the like. (See Prosser on Torts [2d ed.], § 95; *Gunsul* v. *Ray*, 6 Cal.App.2d 528, 530 [45 P.2d 248].)

The defamatory words spoken in this case clearly fall within the provisions of Civil Code section 47, subsection 3(1) as being spoken by one interested to one interested. (See 3 Rest., Torts, § 595; *Jeffers* v. *Screen Extras Guild Inc.*, 162 Cal.App.2d 717, 729-730 [328 P.2d 1030].) However, the statute itself specifically requires that the communication, to be privileged, must be without malice. Proof of malice destroys the conditional privilege. (*Hale Company* v. *Lea*, 191 Cal. 202, 205 [215 P. 900].) The existence or nonexistence of malice is a question of fact for the jury and the evidence of prior defamation of similar import in this case was sufficient to justify submission of the question to the jury. (*Clark* v. *McClurg*, 215 Cal. 279, 286 [4 P.2d 149, 9 P.2d 505, 81 A.L.R. 908]; *Scott* v. *Times-Mirror Co.*, 181 Cal. 345, 358 [184 P. 672, 12 A.L.R. 1007].) The jury in awarding punitive damages impliedly found malice. And the evidence fairly supports its finding notwithstanding appellants' attempted explanation.

Appellants also contend that the trial court erred in failing to instruct the jury on the law relating to an "independent contractor" as was requested. Apparently appellants are contending that Wadler was an independent contractor and not an agent of Western Farms, Inc. Where a general manager of a corporation deals with the public, within the apparent scope of his authority, it is presumed, prima facie, that he acts for the corporation. (*Lowe* v. *Yolo County etc. Water Co.*, 157 Cal. 503, 512 [108 P. 297].) Wadler was not individually a member of the association. It clearly appears from the record that Wadler signed the application for membership in Western Dairymen's Association as "Directing Manager" of Western Farms, Inc. No person other than Wadler dealt with the Dairymen's Association on behalf of Western Farms, Inc., except the president of Western Farms when he designated Wadler as the corporation's representative. No evidence was presented which would have warranted the proposed instruction. A court is not required to instruct the jury as to law inapplicable to the case. (*People*

v. *Adamson,* 118 Cal.App.2d 714, 725 [258 P.2d 1020].) The trial court's refusal to give the proposed instruction was not error.

 ■ Appellants next contend that the court erred in giving appellants' Instruction Number 2 which reads as follows: "You are instructed that malice in fact or actual malice, may be proven directly or indirectly, that is to say, by direct evidence of evil motive and intent, or by legitimate inference or inferences to be drawn from other facts and circumstances in evidence. It is for you to say whether, under all the facts and circumstances in evidence in this case, actual malice on the part of the defendant towards the plaintiff has been shown. You are to judge from all the evidence whether such malice existed or not." Appellants contend that as this instruction places no limitation on the source of evidence from which malice may be established, it conflicts with section 48 of the Civil Code, which provides that malice is not to be inferred from the defamatory communication itself. There might be some merit in this contention if the instruction stood by itself; but the fact is that immediately before giving this instruction, and again shortly thereafter, the trial court specifically instructed the jury as to the provisions of section 48 of the Civil Code. Under the circumstances the trial court did not err in giving the instruction complained of.

 ■ Appellants also contend that it was error for the trial court to read section 3333 of the Civil Code to the jury, as that section, in appellants' opinion, does not correctly state the applicable law. The section provides in part that the measure of damages "For the breach of an obligation not arising from contract, . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Appellants cite *Turner* v. *Hearst,* 115 Cal. 394, 400 [47 P. 129], in support of their position. That case holds that to be recoverable in an action for libel or slander, damages must be the direct result of the defendant's defamatory utterance, and not of any mere repetition of it by others. In this case, respondents claim no damages by reason of a repetition of the defamatory statements by independent third parties. Nor is there anything in the instructions that would so indicate. We conclude that this contention is also without merit.

 ■ Appellants next contend that the trial court erred in giving the following instruction: "In estimating the amount of plaintiffs' actual or compensatory damages, if you believe from the evidence that the plaintiff has been damaged

by the statements complained of in this case, or any of them, you may take into consideration the grief, anguish, mental suffering, mortification and humiliation which the plaintiff has undergone and suffered by reason of the words spoken by the defendant, Herman Wadler, if you believe from the evidence that the plaintiffs, or either of them, did suffer grief, anguish, mental suffering, mortification or humiliation, then you may award such plaintiff such compensatory or actual damages as you find from the evidence such plaintiff has suffered, or that it is reasonably certain such plaintiff will suffer in the future by reason of said statements not exceeding the amount of compensatory damages demanded in the complaint.'' Appellants argue that this instruction permits the jury to consider unintended repetition and infer that all publications received in evidence may form the basis of compensatory damages because the instruction refers to ''statements complained of in this case, or any of them.'' There is no merit in this contention since the trial court also specifically instructed the jurors that evidence of prior statements by Wadler was admitted solely upon the issue of malice. Further, reading the instruction as a whole, it is clear that it is limited to the words spoken by appellant Wadler.

Nor is there any merit in appellants' contention that the court erred in giving an instruction concerning appellant Wadler's wealth. ''[W]here punitive or exemplary damages are allowed, the evidence is admitted by which to graduate the punishment.'' (*Barkly* v. *Copeland,* 74 Cal. 1, 7 [15 P. 307, 5 Am.St.Rep. 413].)

 Finally, appellants contend that the trial court's Instruction Number 13 would allow the jury to consider the suffering of respondents' respective families as a measure of damages. No such construction can possibly be given to that instruction. The instruction reads: ''In assessing general or compensatory damages the jury may consider the prominence of plaintiff in the community in which the plaintiff lives, his social standing, his family status, or any mental suffering proximately resulting from the defamation.''

The judgments are affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied March 10, 1961, and appellants' petition for a hearing by the Supreme Court was denied April 12, 1961.