[No. H010823. Sixth Dist. Mar. 30, 1994.]

GREGORY DON HUNSUCKER et al., Plaintiffs and Appellants, v. SUNNYVALE HILTON INN, Defendant and Respondent.

## COUNSEL

Davis, Cowell & Bowe, J. Thomas Bowen and Florence E. Culp for Plaintiffs and Appellants.

Low, Ball & Lynch, Patrick E. Taylor, Jr., and Michael J. Estep for Defendant and Respondent.

## OPINION

**COTTLE, P. J.**—Plaintiffs Gregory Don Hunsucker, Linda Mae Hunsucker, Michelle Hunsucker and Jerry Hunsucker appeal from the judgment entered against them after the court granted the motion of defendant Sunnyvale Hilton Inn for summary judgment. We shall affirm.

### FACTS

Plaintiff Gregory Don Hunsucker is president of United Food and Commercial Workers Union, Local 1288. On June 18, 1990, Hunsucker, his wife and children traveled from their Fresno home to Sunnyvale so Hunsucker

could attend a week-long union meeting. They registered at defendant Sunnyvale Hilton Inn, in adjoining rooms 3701 and 3703. After they registered, Hunsucker immediately left to attend a union meeting while his family unloaded the car and went to lunch.

When the family returned from lunch, they noticed that some empty soda cans they had left in the room were missing. Mrs. Hunsucker went into the hallway to see if the maid had taken them. She found the maid with the cans, but found it difficult to communicate with her. She told the maid she could keep the cans.

Shortly thereafter, Jerry Hunsucker told his mother that someone had gone through his bags, although nothing was missing. Mrs. Hunsucker then checked her bag and found that a new bottle of perfume was missing.

The following day, a maid apparently told the management at Hilton that she had seen a woman in Hunsucker's room brandishing a gun. In the early morning hours of June 20, 1990, Hilton manager Steve Cook called the police to report what the maid had seen. He stated that the rooms were registered to a Mr. Don Hunsucker[1] of Fresno, who was representing a union local at business meetings. He also informed the police that Hunsucker had submitted a union local company credit card for payment and that he did not appear to be a problem.

The police conducted a routine check for outstanding warrants and background information on the name "Don Hunsucker." That search revealed that a Don Hunsucker had a felony warrant for assault and an arrest record from Bakersfield and Kern Counties for weapons violations and robbery. The police concluded that the person registered in rooms 3701 and 3703 was the same Don Hunsucker that had the felony warrant and weapons record.

At approximately 8:45 a.m., police arrived at the Hilton and took positions around the rooms registered to the Hunsuckers. They then telephoned the room and told Hunsucker to come out with his hands up. Hunsucker obeyed and was handcuffed. He remained handcuffed for approximately five minutes. During this time the remaining members of the Hunsucker family were called out one at a time and questioned. The police searched the rooms and found only a plastic toy gun. About this same time, police determined that the Gregory Don Hunsucker who was being detained was not the same Don Hunsucker who had the weapons record and felony warrant. They released him at this point, explaining why they had taken the actions they had.

---

[1]Although Hunsucker's first name is Gregory, he uses his middle name, Don. He registered at the hotel as Don Hunsucker.

Hunsucker told the police he understood their actions and had been confused with the other Hunsucker in the past. Altogether, the detention lasted about 30 minutes.

After their release, the Hunsuckers met with the Hilton manager. He explained that a maid had seen a woman with a gun in their room the day before. At that time, Mrs. Hunsucker reported that her perfume was missing. The manager apologized for the entire incident and gave them a check for $57 to reimburse them for the loss.

The Hunsuckers sued the Hilton and the City of Sunnyvale for false imprisonment, assault and battery and deprivation of their civil rights. Later, the City of Sunnyvale was voluntarily dismissed from the lawsuit.

After discovery was already closed, the Hilton filed a motion for summary judgment, arguing that the report to the police regarding the gun sighting at the hotel was a privileged communication under Civil Code section 47. The court granted the motion and entered judgment in favor of Hilton. Plaintiffs appealed.

## STANDARD OF REVIEW

Code of Civil Procedure section 437c, subdivision (c) provides, in relevant part, that a "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

"Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court. (Code Civ. Proc., § 437c . . . .)" (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) "First, we identify the issues framed by the pleadings," since the motion and opposition must be addressed to these issues. (*Ibid.*) Second, we determine whether the moving party has met its burden of proof by establishing facts which negate the opponent's claim and justify a judgment in movant's favor. (*Ibid.*) When a defendant is the moving party, his "declarations and evidence must either establish a complete defense to plaintiff's action or demonstrate an absence of an essential element of plaintiff's case." (*Dolquist* v. *City of Bellflower* (1987) 196 Cal.App.3d 261, 266 [241 Cal.Rptr. 706].) If the moving party meets its burden of proof, then and only then do we look to "the third and final step . . . to determine whether the opposition demonstrates the existence of a triable, material

factual issue." (*AARTS Productions, Inc. v. Crocker National Bank, supra,* 179 Cal.App.3d at p. 1065.)

## DISCUSSION

■ Plaintiffs contend "the acts of Hilton in reporting to the police that Appellants had a gun, which acts resulted in Plaintiffs-Appellants being assaulted, battered and falsely imprisoned" were not absolutely privileged under Civil Code section 47, as the trial court found. We disagree.

An absolute privilege attaches to publications made "[i]n any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable [by a mandate action]." (Civ. Code,[2] § 47, subd. (b).)

Plaintiffs contend the absolute privilege of section 47 should not apply in their false imprisonment action because the privilege is normally applied to defamation actions or other causes of action, such as intentional infliction of emotional distress, misrepresentation or invasion of privacy, which are closely related to defamation. However, in *Silberg v. Anderson* (1990) 50 Cal.3d 205, 215-216 [266 Cal.Rptr. 638, 786 P.2d 365], the California Supreme Court made it clear that the privilege of section 47 applies to bar *all* tort actions, except for malicious prosecution, that are based upon a communication of the proper type. (See also *Rubin v. Green* (1993) 4 Cal.4th 1187, 1193-1196 [17 Cal.Rptr.2d 828, 847 P.2d 1044].) Here, indisputably, all of the actions about which plaintiffs complain arose as a result of the communication from Hilton's manager to the Sunnyvale police. (Cf. *Rubin v. Green, supra,* at p. 1196.)

Plaintiffs also argue the privilege should not apply because the police are neither legislature, nor judiciary, nor "any other proceeding authorized by law" and, therefore, are not within the scope of the privilege. One appellate opinion, *Fenelon v. Superior Court* (1990) 223 Cal.App.3d 1476 [273 Cal.Rptr. 367], in fact supports this view.[3] However, the weight of authority in California, the very articulate dissent in *Fenelon* by Justice Benke, and

---

[2]All further statutory references are to the Civil Code unless otherwise specified.

[3]The *Fenelon* court relied heavily on a law review article written by an attorney named Ablon. Ablon represented a party named Friedman in a defamation action. The Friedman action was dismissed by the trial court and affirmed in an unpublished opinion in the Court of Appeal on the ground that an allegedly false report to police was absolutely privileged under former section 47, subdivision 2 (now § 47, subd. (b)) based on the opinion in *Williams v. Taylor, supra,* 129 Cal.App.3d 745. (See *Lubetzky v. State Bar* (1991) 54 Cal.3d 308, 317, fn. 7 [285 Cal.Rptr. 268, 815 P.2d 341].)

what we believe is the better view, holds that reports made by citizens to police regarding potential criminal activity fall within the section 47 absolute privilege. (See, e.g., *Williams* v. *Taylor* (1982) 129 Cal.App.3d 745, 753 [181 Cal.Rptr. 423] [communication to police]; *Cote* v. *Henderson* (1990) 218 Cal.App.3d 796, 806 [267 Cal.Rptr. 274] [communication to police]; *Kim* v. *Walker* (1989) 208 Cal.App.3d 375 [256 Cal.Rptr. 223] [communication to parole agents]; *O'Shea* v. *General Telephone Co.* (1987) 193 Cal.App.3d 1040 [238 Cal.Rptr. 715] [communication to investigating officer seeking background information on a candidate for employment with the California Highway Patrol]; see also *Imig* v. *Ferrar* (1977) 70 Cal.App.3d 48 [138 Cal.Rptr. 540] [complaints about attorney to State Bar].)

In *Williams* v. *Taylor, supra,* 129 Cal.App.3d 745, for example, the owner of a car dealership "became alerted to a 'problem' in the body shop and began an investigation. His investigation disclosed numerous inconsistencies in the company's work records, including missing repair orders, the appearance of fictitious names on various repair orders, time logs which did not accurately reflect the time actually spent working on automobiles, [and other inconsistencies]." (*Id.* at p. 750.) He called police, who conducted a month-long investigation. The police submitted their report to the district attorney, who filed a complaint charging plaintiff with two counts of grand theft. At the start of trial, one count was dismissed; plaintiff was acquitted of the other count. Subsequently, he sued the owner of the shop. The owner moved for and was granted summary judgment.

On appeal, affirming the decision of the trial court, the appellate court held "defendants' statements to the Redding Police Department, and in particular, to Officer Jackson, to be absolutely privileged. . . . [¶] Section 47, [subd. (b)] provides for an absolute privilege with regard to statements made 'in any . . . official proceeding authorized by law.' In our view, a communication concerning possible wrongdoing, made to an official government agency such as a local police department, and which communication is designed to prompt action by that entity, is as much a part of an 'official proceeding' as a communication made after an official investigation has commenced. [Citation.] After all, '[t]he policy underlying the privilege is to assure utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing.' [Citation.] In order for such investigation to be effective, 'there must be an open channel of communication by which citizens can call his attention to suspected wrongdoing. That channel would quickly close if its use subjected the user to a risk of liability for libel. A qualified privilege is inadequate under the circumstances. . . . [¶] The importance of providing to citizens free and open access to governmental agencies for the reporting of suspected

illegal activity outweighs the occasional harm that might befall a defamed individual. Thus, the absolute privilege is essential.'" (*Williams* v. *Taylor, supra*, 129 Cal.App.3d at pp. 753-754.)

As Justice Benke observed in her dissent in *Fenelon*, neither the Restatement Second of Torts, section 587, nor the case law of California, nor the opinion of "at least one commentator of substantial reputation" (Prosser & Keeton on Torts) supported the majority's "unduly narrow" definition of "official proceedings." (*Fenelon* v. *Superior Court, supra*, 223 Cal.App.3d at pp. 1485-1486.) "In particular," she noted, ". . . in California the privilege applies to statements made preliminary to or in preparation for either civil or criminal proceedings. [Citations.]" (*Id.* at p. 1484; see subd. (b)(4) of § 47.)

Further, both the California and United States Constitutions, as well as various statutes,[4] provide safeguards for those detained by police to ensure that their rights are not abrogated. This protection applies regardless of whether the absolute privilege of section 47 applies to the citizen who originally made the report to the police. Under these circumstances, we agree with the *Williams* court that the importance of free and open access to the police to report suspected criminal activity outweighs the occasional harm that might befall a defamed individual. We conclude the trial court correctly determined that the absolute privilege of section 47 applied in this case. Accordingly, we need not address plaintiffs' alternative argument, i.e., that if a privilege applied, it was the qualified privilege set forth in subdivision (c) of section 47.[5]

Plaintiffs' final argument is that the Hilton should be liable for false imprisonment based upon the action of the Sunnyvale police. However, the Hilton manager's conduct in reporting the gun sighting to police was absolutely privileged, as discussed above. Additionally, " '[a] . . . person does not become liable for false imprisonment when *in good faith* he gives information—even mistaken information—to the proper authorities though such information may be the principal cause of plaintiff's imprisonment.' " (*Du Lac* v. *Perma Trans. Products, Inc.* (1980) 103 Cal.App.3d 937, 941 [163 Cal.Rptr. 335].) Here the Hilton manager's declaration submitted in support of the summary judgment motion stated he believed the employee's report of a gun sighting and felt obligated to report it to police for safety reasons. At the same time he told police about the gun, he also told them that Hunsucker had union identification and appeared to present no problem.

---

[4]For example, Penal Code section 148.5 provides that "[e]very person who reports to any peace officer . . . that a felony or misdemeanor has been committed, knowing the report to be false, is guilty of a misdemeanor."

[5]A qualified privilege attaches to publications made "[i]n a communication, without malice, to a person interested therein, (1) by one who is also interested . . . ." (§ 47, subd. (c).)

The trial court was correct in granting Hilton's motion for summary judgment. As a matter of law, Hilton cannot be liable either for its communication to police or for the subsequent conduct of the police in detaining plaintiffs.

Accordingly, the judgment is affirmed.

Elia, J., and Bamattre-Manoukian, J., concurred.