Michael C. JOHNSON, Plaintiff,

v.

SYMANTEC CORPORATION, et al., Defendants.

No. C–97–20826 JF.

United States District Court, N.D. California, San Jose Division.

Aug. 5, 1999.

Theresa L. Pfeiffer, Los Gatos, CA, Chris A. Caroll, San Jose, CA, for plaintiff.

Kenneth D. Simonicini, Kerri A. Ridley, Simoncini & Associates, Attorneys at Law, San Jose, CA, for defendant.

ORDER GRANTING DEFENDANT BRUNTON'S MOTION FOR SUMMARY JUDGMENT

FOGEL, District Judge.

Defendant Thomas Brunton's motion for summary judgment, argued May 17, 1999, requires the Court to address a split of authority concerning whether police reports constitute official communications entitled to an absolute privilege pursuant to California Civil Code § 47. The Court

concludes that an absolute privilege is applicable and thus will render judgment in favor of Brunton.[1]

## I. Facts

This case arises from a workplace dispute between Plaintiff and Brunton, who was Plaintiff's subordinate. The dispute may or may not have culminated with Johnson striking Brunton in the chest with both fists. Whether or not Johnson actually hit Brunton, Brunton told medical providers he had been hit in the chest and also reported to law enforcement officers that Johnson had hit him. Johnson then filed the instant lawsuit, claiming that he lost his job and suffered various other adverse consequences because of Brunton's allegedly false statements.

## II. Discussion

Brunton attacks both aspects of Plaintiff's defamation cause of action by arguing that (1) statements made to medical providers did not identify Johnson and therefore could not have been defamatory; and (2) statements made to law enforcement officers were absolutely privileged as "official communications" pursuant to California Civil Code § 47(b)(3). Johnson concedes that Brunton's statements to medical providers are not actionable because the medical records do not reflect that Brunton identified Johnson such that "a third party [could] understand[ ] the [statements'] applicability to plaintiff." *Neary v. Regents of University of California,* (1986) 185 Cal.App.3d 1136, 230 Cal.Rptr.

1. Brunton is the sole remaining defendant after otherwise successful settlement efforts among the parties. Plaintiff contests the instant motion only with regard to a single cause of action for defamation, having expressly abandoned his other causes of action against Brunton in light of information gained through formal discovery.

2. Johnson contends that the instant motion constitutes an attack on the pleadings, and suggests that the resources of all concerned might have been conserved by bringing the challenge earlier as a motion to dismiss or motion for judgment on the pleadings. Johnson overlooks the fact that while he only

281. The sole remaining question, therefore, is whether a police report is subject to an absolute privilege or only a qualified privilege under California Civil Code § 47.

### A. Standard

A motion for summary judgment[2] should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion, and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In the instant case, whether Brunton has met his moving burden depends entirely upon the Court's interpretation of California Civil Code § 47. If section 47 mandates the application of absolute privilege to the category of communication at issue, then Brunton's burden is both met and unrebutted.

### B. Police Reports are Absolutely Privileged Under California Civil Code § 47

As noted above, judgment for Brunton is warranted only if California Civil Code § 47 cloaks with absolute privilege rele-

*opposes* that aspect of the instant motion which attacks the pleadings, the moving papers rely, for the most part, upon facts not apparent from the face of the complaint. In any event, there is no effective difference whether the Court treats the contested portion of this motion as a motion for summary judgment or a motion for judgment on the pleadings because (1) resolution of the remaining issue does not turn upon inferences which the Court may draw from the complaint and (2) a ruling in favor of Brunton would be finally dispositive of the case whether made pursuant to Fed.R.Civ.P. 12(b)(6) or Rule 56.

vant communications to law enforcement entities. The statute provides in part as follows:

A privileged publication or broadcast is one made: [¶¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law .... [¶] (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested....

Thus if a police report is properly considered an "official proceeding authorized by law," it is subject to absolute privilege under section 47(b)(3). Otherwise, the police report at issue in this case only could be privileged under section 47(c), applicable to communications made "without malice" (in which case Brunton has provided no evidentiary basis for granting summary judgment).

"When interpreting state law, federal courts are bound by decisions of the state's highest court." *Nelson v. City of Irvine,* 143 F.3d 1196, 1206 (9th Cir.1998). Here, there are no California Supreme Court cases addressing whether police reports are properly categorized under section 47(b)(3) or under section 47(c), and the issue is the subject of a split of authority among the California Courts of Appeal.[3] "Where the state's intermediate appellate courts have reached conflicting results, the federal court must ascertain for itself the most authoritative assessment of state law." *Air–Sea Forwarders v. Air Asia Company,* 880 F.2d 176, 186 (9th Cir.1989).

The line of cases cloaking police reports with the absolute privilege of section 47(b)(3) may be traced to *Williams v. Taylor,* 129 Cal.App.3d at 745, 181 Cal.Rptr. 423. The *Williams* court expressed a dual

rationale for finding an absolute privilege. First, police reports were found to satisfy the "official proceeding" requirement of section 47 because "a communication [d]esigned to prompt action by [an official] entity is as much a part of an 'official proceeding' as a communication made after an official investigation has commenced." *Id.* at 753, 181 Cal.Rptr. 423. Second, the court opined that as a matter of public policy, members of the community should feel at liberty to report suspected criminal activities without fear of civil liability. *Id.* at 753, 181 Cal.Rptr. 423.

The other side of the split is represented by *Fenelon v. Superior Court,* (1990) 223 Cal.App.3d 1476, 273 Cal.Rptr. 367. The *Fenelon* court criticizes the decision in *Williams* for ignoring contrary authority from other jurisdictions (where qualified privilege is the rule) and for ignoring a perceived requirement that the "official proceeding" of section 47 must be of a judicial or quasi-judicial nature. The latter point is buttressed in *Fenelon* by the argument that notice and hearing procedures are required to offset the potential for abuse inherent in any absolute privilege.

This Court concludes that the California Supreme Court would adopt the position taken in *Williams.* The Court reaches this result because California's public policy, as explicated both by its courts and by its Legislature, favors the application of an absolute privilege, because existing Ninth Circuit authority addressing the identical issue is in accord, and because the policy arguments in *Fenelon* ultimately are unpersuasive.

---

**3.** The California Supreme Court took note of the split in *Lubetzky, v. State Bar,* (1991) 54 Cal.3d 308, 285 Cal.Rptr. 268, 815 P.2d 341. However, it "express[ed] no opinion on the merits of the controversy." *Id.* at 317, 285 Cal.Rptr. 268, 815 P.2d 341 f.n. 7. In an earlier decision, the Supreme Court supported the proposition that the "official proceeding" of section 47 has been interpreted "broadly," citing among others the decision

in *Williams v. Taylor,* (1982) 129 Cal.App.3d 745, 181 Cal.Rptr. 423. *Slaughter v. Friedman,* (1982) 32 Cal.3d 149, 156, 185 Cal.Rptr. 244, 649 P.2d 886. The *Williams* decision, discussed at length, *infra,* represents the view that police reports are absolutely privileged. The Court does not read either *Lubetzky* or *Slaughter* as having reached substantively the issue addressed herein.

### 1. Policy Considerations and Precedent Support the Application of an Absolute Privilege

Of great significance to this Court's interpretation of section 47 is the fact that the great majority of California's intermediate appellate courts have tended to conclude, and the California Legislature appears to have presumed without saying so explicitly, that section 47(b)(3) applies to police reports. The fact that the majority of California Courts of Appeal which have considered the issue have tended to agree with *Williams*, (see, e.g., *Cabesuela v. Browning–Ferris Industries*, (1998) 68 Cal.App.4th 101, 80 Cal.Rptr.2d 60; *Passman v. Torkan*, (1995) 34 Cal.App.4th 607, 40 Cal.Rptr.2d 291; *Hunsucker v. Sunnyvale Hilton Inn*, (1994) 23 Cal.App.4th 1498, 28 Cal.Rptr.2d 722) must be afforded some weight in predicting how California's highest court would rule. The *Passman* court's observation that "[t]o date no reported appellate decision has followed the reasoning and rationale of *Fenelon*," should not be taken lightly. *Passman*, 34 Cal.App.4th at 618, 40 Cal.Rptr.2d 291.[4]

Moreover, *Cabesuela* and *Hunsucker* are significant because they stem from trial court decisions rendered by the Santa Clara Superior Court, from whence the instant case was removed. A decision in this case contradicting the findings of absolute privilege in *Cabesuela* and *Hunsucker* would constitute a potential incentive for litigants in California's Sixth District to forum shop, comparing

the legal stock of the state and federal courts.[5] A finding by this Court of qualified privilege would therefore be in tension with the policy considerations delineated in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The applicability of absolute privilege to communications made in the context of *ongoing* governmental investigations into suspected wrongdoing is undisputed, except for the contrary implication of *Fenelon. See, e.g., Braun v. Bureau of State Audits*, (1998) 67 Cal.App.4th 1382, 1388–89, 79 Cal.Rptr.2d 791. The relevant inquiry in this case simply is whether there should be any difference in the treatment afforded to *pre-investigation* communications intended to trigger official action. Research reveals that even this narrow question has already been answered in the affirmative by California courts. *See King v. Borges*, (1972) 28 Cal.App.3d 27, 34, 104 Cal.Rptr. 414; *accord, Braun*, 67 Cal.App.4th 1382, 1390, 79 Cal.Rptr.2d 791; *Imig v. Ferrar*, (1977) 70 Cal.App.3d 48, 138 Cal.Rptr. 540.

The conclusion that absolute privilege applies to police reports is further bolstered by an examination of how the Legislature otherwise has chosen to deal with the potential for citizen abuse of law enforcement mechanisms. For instance, Penal Code § 11172 explicitly causes persons filing knowingly false child abuse reports to be "[civilly] liable for any damages caused." False police reports of child mo-

---

**4.** One post-*Passman* case which purports to follow *Williams* actually may be more consistent with *Fenelon*: In *Devis v. Bank of America*, (1998) 65 Cal.App.4th 1002, 77 Cal. Rptr.2d 238, the defendant bank falsely reported to the police that the plaintiff-account holder had stolen checks from another account holder. The court found the police report to be privileged as an "official proceeding" and explicitly agreed with *Williams* "with one exception." *Devis*, 65 Cal.App.4th at 1008, 77 Cal.Rptr.2d 238. The exception that the *Devis* court takes with *Williams* is expressed as follows: "[W]e believe that controlling authority establishes that the privilege applies only if the erroneous report to the police is made in good faith." *Id.* at 1008, 77

Cal.Rptr.2d 238. However, the distinction was "not critical," to the case then at bar.

It is unclear how an absolute privilege with a "good faith" exception differs at all from a qualified privilege. Thus the *Devis* court's professed preference for *Williams* over *Fenelon* is confusing. It is also dictum, given that the conduct at issue in *Devis* was deemed to be protected even by the (effectively) qualified privilege described by the *Devis* court.

**5.** A finding in this case that absolute privilege does not apply also would create a *division within* the Northern District of California because it would conflict with the decision in *Goehring v. Wright*, 858 F.Supp. 989, 1003 (N.D.Cal.1994) (relying on *Hunsucker* ).

lestation thus are excepted from the absolute privilege of Civil Code 47 to avoid stripping all meaning from the liability provision of Penal Code § 11172. *Begier v. Strom*, (1996) 46 Cal.App.4th 877, 54 Cal.Rptr.2d 158. That the Legislature saw fit explicitly to impose liability for knowingly false publications of child abuse is evidence of its belief that such utterances were otherwise subject to absolute privilege; otherwise, the liability provision of section 11172 would accomplish nothing because the common law of defamation already would impose liability.

In contrast to Penal Code § 11172, Penal Code § 148.5, which makes it a misdemeanor knowingly and falsely to report to a law enforcement official "that a felony or misdemeanor has been committed," contains no provision for civil liability. The Legislature's special treatment of false child abuse reports in contrast to its treatment of other police reports indicates an intent to shelter the publisher of the latter against all but a criminal conviction obtained under a reasonable doubt standard.[6]

### 2. Existing Ninth Circuit Authority Favors the Application of Absolute Privilege

In addition to the foregoing reasoning and authority, the only relevant Ninth Circuit case to discuss section 47 strengthens even further the *Erie* doctrine considerations discussed earlier. *See Forro Precision Inc. v. IBM*, 673 F.2d 1045, 1055 (9th Cir.1982). In *Forro*, communications between IBM and the authorities were held to be absolutely privileged despite allegations that IBM misled the San Jose Police Department in order to enlist its help to investigate a business rival. While the Ninth Circuit in *Forro* apparently found its own application of section 47 quite unremarkable, the holding amounts to on-point speculation that the California Supreme Court would find even bad faith police reports to be absolutely privileged

under section 47. *See Forro*, 673 F.2d at 1055.

Although a circuit court's prediction of state law is not binding in the same way as is its definitive interpretation of federal law, as a practical matter a circuit court's interpretations of state law must be accorded great deference by district courts within the circuit. Were Plaintiff to appeal the instant ruling, the Ninth Circuit would review, *de novo*, this Court's interpretation of California law. *See Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991) (finding appellate level deference to district courts' state law interpretations to violate the *Erie* and *stare decisis* doctrines). Then, in conducting its *de novo* review, a Ninth Circuit panel not sitting *en banc* would be bound to follow *Forro*, and thereby would be compelled to reverse any decision which necessarily rejected *Forro*. The Ninth Circuit's decision in *Forro* as reflected in *Salve*'s gloss on *Erie* therefore looks, in the present light, very much like controlling authority requiring a finding of absolute privilege.

### 3. The Fenelon Court's Arguments are not Persuasive

To be sure, the conclusions drawn from the above considerations are not beyond reasoned debate, as illustrated by the decision in *Fenelon*, 223 Cal.App.3d 1476, 273 Cal.Rptr. 367. The *Fenelon* court's chief justifications for finding only a qualified privilege are (1) conformity with the law of other jurisdictions, and (2) the fear that absolute privilege without the safeguards of quasi-judicial proceedings would facilitate malicious use of law enforcement mechanisms. This Court, however, ultimately disagrees with both the reasoning and the conclusions set forth in *Fenelon*.

### a. Law of Other Jurisdictions Does Not Inform Interpretation of Section 47

In *Fenelon*, numerous cases from other jurisdictions are cited without analysis for

---

**6.** Nothing herein is intended to interpret the applicability of section 47 with respect to malicious prosecution claims.

the proposition that *Williams* marks an unjustified deviation from the majority rule of qualified privilege for police reports. *See Fenelon*, 223 Cal.App.3d at 1482, 273 Cal.Rptr. 367. Although the number of authorities cited nevertheless is impressive, the persuasive force of these authorities reminds the Court of an anecdote involving Albert Einstein. Some time after Einstein revolutionized the discipline of physics with his general and special theories of relativity, a book was published entitled "100 Authors Against Einstein." Einstein's reputed response to the "100 Authors" was simply that if he had been wrong then "one would have been enough." Stephen Hawking, *A Brief History of Time* 178 (Bantam Books 1988).

The weight of numbers is relevant to show that *Williams* is in the minority only if the cases cited in *Fenelon* involve the interpretation of statutes comparable to section 47(b)(3).[7] However, eighteen of the nineteen cases merely apply the common law privilege for good faith communications between interested parties (codified in California by Civil Code § 47(c)(1)), or similar case law precedent. While the nineteenth case, *Hardaway v. Sherman Enterprises, Inc.*, (1974) 133 Ga.App. 181, 210 S.E.2d 363, did involve the application of a statutorily created privilege, the possibility of *absolute* privilege did not arise because the statute at issue explicitly applied only to communication made in "good faith." *Id.* at 181, 210 S.E.2d 363 *citing* Code of Georgia § 105–709(1) (now § 1–5–7).

In none of the nineteen cases was the scope of a statutory privilege for "official proceeding[s]" addressed. Thus, *Fenelon*'s lengthy recitation of out-of-state cases applying qualified privilege to various citizen reports of criminal activities has little bearing upon the determination of how section 47 should be applied to police reports in California.

*b. Section 47 Does not Require that an "Official Proceeding" be "Quasi–Judicial"*

The *Fenelon* court also was concerned that "to clothe with absolute immunity communications made to a body acting in other than a quasi-judicial capacity . . . would provide an unchecked vehicle for silent but effective character assassination." *Fenelon*, 223 Cal.App.3d at 1483, 273 Cal.Rptr. 367 *quoting Toker v. Pollak*, (1978) 44 N.Y.2d 211, 405 N.Y.S.2d 1, 376 N.E.2d 163. To support the proposition that a quasi-judicial proceeding is required by section 47(b)(3), the *Fenelon* court relies on *McMann v. Wadler*, (1961) 189 Cal.App.2d 124, 11 Cal.Rptr. 37. In *McMann*, "the 'official proceeding' embraced in the purview of the statute" was determined to be "that which resembles judicial and legislative proceedings, such as transactions of administrative boards and quasi-judicial and quasi-legislative proceedings." *Id.* at 129, 11 Cal.Rptr. 37. This Court respectfully suggests however, that the *Fenelon* court reads *McMann* too broadly; the actual holding of the case was simply that the term "official proceeding" does not describe a "meeting of a board of directors of a nonprofit corporation or the like." *Id.* at 129, 11 Cal.Rptr. 37.[8]

---

**7.** California Civil Code Section 4 provides as follows:

The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. The Code establishes the law of this State respecting the subjects to which it relates, and its provisions are to be liberally construed with a view to effect its objects and to promote justice.

**8.** This more limited view of *McMann* also is more consistent with the view of the Califor-

nia Supreme Court which commented in *Slaughter v. Friedman*, (1982) 32 Cal.3d 149, 185 Cal.Rptr. 244, 649 P.2d 886, that the "use of the word 'official' probably was intended to deny application of the absolute privilege to nongovernmental proceedings." *Id.* at 156, 185 Cal.Rptr. 244, 649 P.2d 886, *quoting Hackethal v. Weissbein*, (1979) 24 Cal.3d 55, 154 Cal.Rptr. 423, 592 P.2d 1175 (*superseded* by statute).

The *Fenelon* court's paramount concern was with a perceived lack of safeguards. The court noted that, prior to *Williams*, absolute privilege applied only where the governmental agency receiving a report was authorized to hold *its own* quasi-judicial proceeding.[9] *See, e.g., Imig v. Ferrar*, (1977) 70 Cal.App.3d 48, 138 Cal.Rptr. 540 (concerning a report of police misconduct where a police board was empowered to hold hearings and discipline officers). The Court reasoned that the extra safeguard of a quasi-judicial proceeding is necessary to provide some protection against the potential abuses of absolute privilege. The relevant forum, however, for determining the truth of a police report is a criminal trial, whose safeguards go beyond those employed in any quasi-judicial proceeding. The absence of a civil remedy for a false report is a significant policy consideration, but one which must be balanced against the need to encourage members of the community to communicate freely with law enforcement agencies without fear of being sued.

In sum, the reasoning set forth in *Fenelon* does not militate against finding that section 47 confers absolute privilege upon police reports. The cases cited by *Fenelon* to show that other jurisdictions apply only qualified privilege are of little weight because none of them interpret statutes similar to section 47. Moreover, the lack of a quasi-judicial proceeding associated with police reports does not relevantly distinguish such reports from other absolutely privileged communications.

### III. Conclusion

In light of all of the above, this Court concludes that California's highest court would hold that police reports are absolutely privileged under California Civil Code § 47(b)(3). While this interpretation of California law leaves open the possibility that some real wrongs may go unredressed, and while the Court has not been unmindful of this possibility in conducting

its analysis, the clear weight of judicial and legislative authority appears to support this conclusion.

### ORDER

Accordingly, Brunton's motion for summary judgment is granted as to Plaintiff's Fourth Cause of Action. Pursuant to stipulation, the Fifth and Sixth Causes of Action also are dismissed with prejudice as to the moving defendant.

---

9. Notably, this distinction does not gainsay the conclusion of *Williams* and other cases that communications which *initiate* official

proceedings may be considered to be *part* of those proceedings for section 47 purposes.