134 Cal.Rptr.2d 403 (2003)
109 Cal.App.4th 13
Paul J. NAVARETTE, Plaintiff and Appellant,
v.
Gina E. HOLLAND, Defendant and Respondent.
No. D039489.
Court of Appeal, Fourth District, Division One.
May 22, 2003.
Review Granted September 10, 2003.
*405 Cervantes & Associates and Lisa A. Cervantes, San Diego, for Plaintiff and Appellant.
Lawton Law Firm and Dan Lawton, San Diego, for Defendant and Respondent.
Certified for Partial Publication.[1]
*404 HALLER, J.
The plaintiff in this case was acquitted of spousal abuse charges in a prior criminal proceeding, and then sued his former wife alleging she lied to sheriffs deputies about his conduct. We conclude the wife's report to law enforcement officers was absolutely privileged (Civ.Code, § 47, subd. (b)), and thus the causes of action based on this allegation are barred. In so concluding, we determine this court's previous decision in Fenelon v. Superior Court (1990) 223 Cal.App.3d 1476, 273 Cal.Rptr. 367 is no longer supported by applicable authority and we therefore decline to follow it. In the unpublished portion of this opinion, we determine the trial court properly granted summary judgment on plaintiffs malicious prosecution cause of action.
We thus affirm the judgment on the malicious prosecution cause of action. We reverse on the remaining claims with directions *406 to vacate the order granting the demurrer and to grant plaintiffs request for leave to amend the complaint to add allegations of false communications that were unconnected with the wife's report to law enforcement officers and prosecutors.

FACTUAL SUMMARY
Paul J. Navarette and Gina E. Holland were married in March 1999.[2] Sixteen months later, the couple was in the process of moving out of their condominium when Gina called 911 from a neighbor's house to report that Paul had physically abused her. When sheriffs deputies arrived, they observed Gina had redness on her back, leg, and stomach, and a cut to her right wrist. Gina told the deputies that during an argument with her husband outside their home, "Paul got angry, grabbed [her] by the stomach and threw her to the ground. Paul then began to drag Gina down a flight of about (8) stairs, into the ... home.... Paul [then] pushed/threw Gina into the first bedroom." Gina signed a report for a citizen's arrest.
Based on Gina's statements and visible physical injuries, the deputies arrested Paul for domestic violence. At the ensuing criminal trial in which Paul was charged with spousal battery, Gina testified that Paul pulled her by the arm and dragged her during the argument, but she denied that Paul intentionally threw her down the stairs. Gina said that Paul appeared to have lost his balance and inadvertently dropped her to the ground. A jury found Paul not guilty of the charged offense.
After the couple divorced, Paul filed a civil action against Gina, claiming her initial statements to the neighbor, 911 operator, law enforcement officers, and district attorney employees were false and malicious. Paul sought to recover against Gina based on theories of defamation, intentional infliction of emotional distress, and malicious prosecution. The court sustained Gina's demurrer on the defamation and intentional infliction causes of action, finding each of Gina's alleged false statements was absolutely privileged under Civil Code section 47, subdivision (b).[3] The court further granted summary judgment on the malicious prosecution claim based on its determination that probable cause existed as a matter of law.

DISCUSSION

I. Demurrer

Paul contends the trial court erred in sustaining the demurrer because Gina's alleged false statements fell outside section 47, subdivision (b)'s absolute privilege.
In examining this contention, we begin by describing the allegations of Paul's complaint, and assume the truth of those allegations. (See Gerawan Farming, Inc. v. Lyons (2000) 24 Cal.4th 468, 515-516, 101 Cal.Rptr.2d 470, 12 P.3d 720.) We then set forth the law pertaining to the relevant scope of the privilege under section 47, subdivision (b). We then apply these legal principles to the allegations of the complaint. We conclude that although the defamation and intentional infliction claims are based solely on privileged statements, the trial court erred in rejecting Paul's request that he be permitted to amend his complaint to allege conduct that falls outside the privilege.

A. The Allegations of the Complaint

Paul's complaint alleges the following. Shortly before Gina reported the abuse, Gina disagreed with Paul regarding his *407 method of packing items and verbally abused and harassed him "with a profanity-laced tirade...." Because the couple was outside their residence and Paul was concerned neighbors could hear Gina's insults, Paul asked if "they could continue their `conversation' inside the home, but [Gina] was not receptive to that suggestion." Instead, Gina continued her confrontational manner. In response, Paul "held [Gina's] wrist lightly and repeated that they should finish the conversation inside the home to avoid the neighbors' attention and anyone else who might be watching. [Gina] refused, and just sat down on the floor of the garage." Paul then "attempted to pick [Gina] up by placing his hands under her armpits for the purpose of carrying [Gina] into the house." As Paul was doing this, Gina "resisted by holding her legs out in front of her and keeping her weight on the floor." Paul "then inadvertently tripped down the stairs while holding [Gina]." Paul apologized, and asked Gina "if they could please stop arguing." Gina was upset and went to the house of her neighbor, Christine Juarez, and said her husband had "`beat her.'"
Shortly thereafter, Gina called 911 and told the operator that "`My husband just dragged me from the front of the house to the back and he's hurt me real bad. I need someone to help keep my husband off me.'" Gina was in the presence of her neighbor Juarez when she made the call. When San Diego County Sheriffs Deputy Ron Hauser arrived, Gina said her husband had been verbally abusive to her, and that he threw her on the ground, grabbed her by the stomach, dragged her down a flight of eight stairs, and then threw her into a bedroom.
Paul alleged these "accusations ... [were] heard by third parties, including Officer Hauser, the 911 operator, and
Christine Juarez. [The] accusations ... were false, [¶] ... [Gina] falsely accused [Paul] of verbal and physical abuse by stating these accusations to several third parties. [Gina's] false accusations resulted in the improper arrest of Paul...." Paul further alleged that "as a direct result of the false accusations" repeated by Gina to these individuals, district attorney employees, and "other as yet unknown third parties," Paul's "name and reputation was and continues to be severely damaged."

B. Applicable Legal Principles

Section 47, subdivision (b) bars all tort causes of action, other than malicious prosecution, based on conduct or statements protected by the privilege. (Silberg v. Anderson (1990) 50 Cal.3d 205, 215-216, 266 Cal.Rptr. 638, 786 P.2d 365 (Silberg)). This absolute privilege applies to communications made in a "judicial proceeding [or] in any other official proceeding authorized by law." (§ 47, subd. (b); see Silberg, supra, 50 Cal.3d at p. 212, 266 Cal.Rptr. 638, 786 P.2d 365.) The courts have interpreted this statutory language to include "any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." (Silberg, supra, at p. 212, 266 Cal.Rptr. 638, 786 P.2d 365.) The Silberg court explained that broadly construing the privilege in this manner "promotes the effectiveness of judicial proceedings by encouraging `open channels of communication and the presentation of evidence' ... [and] `assure[s] utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing.'" (Id. at p. 213, 266 Cal.Rptr. 638, 786 P.2d 365, citations omitted.)
*408 Under these principles, most California courts have held statements to law enforcement officers to report suspected wrongful activity are absolutely privileged under section 47, subdivision (b), even if the report is false and made in bad faith. (See Beroiz v. Wahl (2000) 84 Cal.App.4th 485, 494-496, 100 Cal.Rptr.2d 905; Cabesuela v. Browning-Ferris Industries of California, Inc. (1998) 68 Cal.App.4th 101, 112, 80 Cal.Rptr.2d 60; Cote v. Henderson (1990) 218 Cal.App.3d 796, 806, 267 Cal. Rptr. 274; Hunsucker v. Sunnyvale Hilton Inn (1994) 23 Cal.App.4th 1498, 1502-1504, 28 Cal.Rptr.2d 722; Williams v. Taylor (1982) 129 Cal.App.3d 745, 753-754, 181 Cal.Rptr. 423 (Williams); accord Johnson v. Symantec Corp. (1999) 58 F.Supp.2d 1107, 1108-1113.) These courts have reasoned that "communication ... designed to prompt action by [an official] entity, is as much a part of an `official proceeding' as a communication made after an official investigation has commenced." (Williams, supra, 129 Cal.App.3d at p. 753, 181 Cal.Rptr. 423; accord Kashian v. Harriman (2002) 98 Cal.App.4th 892, 927, 120 Cal.Rptr.2d 576; Wise v. Thrifty Payless, Inc. (2000) 83 Cal.App.4th 1296, 1303, 100 Cal.Rptr.2d 437; Cruey v. Gannett Co. (1998) 64 Cal.App.4th 356, 368, 76 Cal. Rptr.2d 670.) Further, this rule ensures citizens will be protected "from the threat of litigation for communications to government agencies whose function it is to investigate and remedy wrongdoing," and recognizes "`[t]he importance of providing to citizens free and open access to governmental agencies for the reporting of suspected illegal activity.'" (Wise v. Thrifty Payless, Inc., supra, 83 Cal.App.4th at p. 1303, 100 Cal.Rptr.2d 437; see Williams, supra, 129 Cal.App.3d at pp. 753-754, 181 Cal.Rptr. 423.)
There is only one reported decision reaching a contrary conclusion. (Fenelon v. Superior Court, supra, 223 Cal.App.3d 1476, 273 Cal.Rptr. 367 (Fenelon)). In Fenelon, a majority of this court declined to follow Williams, which held the absolute privilege applied to a statement made to police officers to report suspected criminal activity. (Id. at pp. 1479-1483; Williams, supra, 129 Cal.App.3d 745, 181 Cal.Rptr. 423.) The Fenelon majority reasoned that where a report is made solely to the police, it is not made in a judicial or quasi-judicial context with the necessary notice, hearing, and review protections, and therefore only a qualified immunity should apply. (Fenelon, supra, 223 Cal.App.3d at pp. 1480-1483, 273 Cal.Rptr. 367.) The majority further expressed concern that Williams had not adequately recognized the importance of protecting individuals from false accusations of wrongdoing. (Id. at pp. 1479-1480, 273 Cal.Rptr. 367.)
Subsequently, each of the California appellate courts considering the issue have criticized the reasoning of the Fenelon decision, and have concluded that Williams represents the better view. (See Kashian v. Harriman, supra, 98 Cal.App.4th at p. 927, 120 Cal.Rptr.2d 576; Beroiz v. Wahl, supra, 84 Cal.App.4th at pp. 494-96, 100 Cal.Rptr.2d 905; Fremont Comp. Ins. Co. v. Superior Court (1996) 44 Cal.App.4th 867, 876, 52 Cal.Rptr.2d 211; Passman v. Torkan (1995) 34 Cal.App.4th 607, 616-619, 40 Cal.Rptr.2d 291; Hunsucker v. Sunnyvale Hilton Inn, supra, 23 Cal. App.4th at pp. 1502-1503, 28 Cal.Rptr.2d 722; accord Johnson v. Symantec Corp., supra, 58 F.Supp.2d 1107; see also Prosser & Keeton, Torts (5th ed.1984) § 114, pp. 819-820; but see Devis v. Bank of America (1998) 65 Cal.App.4th 1002, 77 Cal.Rptr.2d 238 (Devis)).[4]
*409 After reviewing the majority and dissenting opinions in the Fenelon case, and considering the subsequent authorities, we have concluded we can no longer adhere to this court's prior view. In Fenelon, the majority found that a report to a police officer did not concern an "official proceeding" within the meaning of the statute because the report was not quasi-judicial in nature. (Fenelon, supra, 223 Cal.App.3d at pp. 1480-1483, 273 Cal.Rptr. 367.) However, in Silberg, the California Supreme Court made clear that section 47, subdivision (b)'s privilege applies to publications in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. (Silberg, supra, 50 Cal.3d at p. 212, 266 Cal.Rptr. 638, 786 P.2d 365.) Moreover, the Supreme Court has noted that the statutory privilege "protect[s] communications to or from governmental officials which may precede the initiation of formal proceedings." (Slaughter v. Friedman (1982) 32 Cal.3d 149, 156, 185 Cal.Rptr. 244, 649 P.2d 886, italics omitted.)
Under this high court authority, it is now well settled that section 47, subdivision (b) applies to statements made preliminary to, or in preparation for, either civil or criminal proceedings. (See Kashian v. Harriman, supra, 98 Cal.App.4th at p. 927, 120 Cal.Rptr.2d 576; Wise v. Thrifty Payless, Inc., supra, 83 Cal.App.4th at p. 1303, 100 Cal.Rptr.2d 437; Dove Audio, Inc. v. Rosenfeld, Meyer & Susman (1996) 47 Cal.App.4th 777, 781, 54 Cal.Rptr.2d 830; Passman v. Torkan, supra, 34 Cal. App.4th at pp. 616-619, 40 Cal.Rptr.2d 291.) Thus, the fact that a police report is not itself a judicial or quasi-judicial proceeding does not preclude the application of an absolute privilege. Once a court concludes that a communication is made for the purpose of instituting a judicial proceeding, the communication is necessarily covered by section 47, subdivision (b)'s absolute privilege.
Further, we agree with those courts that have found Fenelon's policy justifications unpersuasive. (Beroiz v. Wahl, supra, 84 Cal.App.4th at p. 495-496, 100 Cal.Rptr.2d 905; Hunsucker v. Sunnyvale Hilton Inn, supra, 23 Cal.App.4th at p. 1504, 28 Cal.Rptr.2d 722; Johnson v. Symantec Corp., supra, 58 F.Supp.2d at p. 1113.) The Fenelon majority expressed concern that applying an absolute privilege for a person's false report to law enforcement would interfere with the rights of the person accused of wrongdoing because of the lack of judicial procedural safeguards when citizens make false statements to the police. (Fenelon, supra, 223 Cal.App.3d at p. 1483, 273 Cal.Rptr. 367.) However, because a report to the police is merely an initial step in a judicial proceeding, an accused will be adequately protected. "[T]he constitutional and procedural safeguards governing California's judicial system undermine the concern that applying the absolute privilege to police reports endangers the rights of the reported wrongdoer." (Beroiz v. Wahl, supra, 84 Cal. App.4th at pp. 495-496, 100 Cal.Rptr.2d 905.)

C. Analysis

Under the legal principles set forth above, Gina's alleged false statements to *410 the 911 operator, sheriffs deputies, deputy district attorneys, and district attorney investigators fall squarely within section 47, subdivision (b)'s privilege. The statements made to these individuals were for the purpose of reporting alleged criminal conduct and/or pursuing criminal proceedings. Thus, Paul's defamation and intentional infliction claims fail to the extent they are based on these statements.
Paul contends he should nonetheless be entitled to pursue his lawsuit because he alleged that Gina made non-privileged defamatory statements to uninvolved third parties, including to Juarez, Gina's neighbor. Gina counters that any statements she made to neighbor Juarez were privileged because those statements were an integral part of her reporting the physical abuse to the police.
We agree with Gina that if Paul is seeking to base his claims on statements made to Juarez immediately following the alleged abuse incident, they are also covered by the privilege. A communication made to report alleged wrongful activity to law enforcement officials is covered by the privilege, even if it is not made directly to a police officer or is overheard by others. (See Devis, supra, 65 Cal.App.4th at pp. 1007-1010, 77 Cal.Rptr.2d 238.) Paul's complaint alleges that after he inadvertently dropped Gina down the stairs, Gina ran to Juarez's house to falsely report Paul's alleged abuse to the authorities. Viewing this allegation together with the police report incorporated into the complaint, Gina's statements to Juarez were an integral part of Gina's phone call to the police to report the alleged abuse and were in furtherance of that report. Thus, Gina's statements to Juarez were likewise protected by the privilege.
Paul alternatively argues that he has alleged or could allege that Gina made false and defamatory statements that were wholly unconnected with her report to the police or prosecutors.
With respect to Paul's argument that his complaint currently includes these allegations, we find this argument to be without merit. We have carefully reviewed the pleading and conclude that although there are some vague references to false statements made to third parties, it is unclear whether these statements were made by Gina to parties unrelated to the police report or criminal proceeding. Although we must liberally construe allegations in a complaint and make all reasonable inferences favoring the plaintiff, it is not the duty of a court to ferret out necessary elements of a cause of action. A party must directly allege facts essential to maintaining the particular cause of action. (See 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 355, pp. 455-456.) If the existence of a potential privilege is disclosed on the face of the complaint, the plaintiff must allege sufficient facts to show the privilege is inapplicable. (See Green v. Uccelli (1989) 207 Cal.App.3d 1112, 1124, 255 Cal.Rptr. 315.) Paul's complaint does not allege sufficient facts to show any of Gina's allegedly false statements fell outside section 47, subdivision (b)'s absolute privilege. Thus, we conclude the trial court properly sustained the demurrer.
However, in the trial court below, Paul requested that the court allow him to "amend [the complaint] to show more of the accusations by [Gina] that happened outside the judicial proceeding...." Specifically, Paul's counsel said, "the facts that we have alleged in the first verified complaint do state that there were third parties that defendant spoke to. And we do know who those third parties are. But we do need time to discover exactly what was *411 said to the additional third parties. And that's why we request leave to amend."
A court abuses its discretion when it sustains a demurrer without leave to amend if there is a reasonable possibility the defect in the complaint can be cured by amendment. (Chavez v. Whirlpool Corp. (2001) 93 Cal.App.4th 363, 369, 113 Cal. Rptr.2d 175.) Paul requested the opportunity to amend his complaint to allege that Gina made defamatory statements to third parties unconnected with the judicial proceeding and unrelated to Gina's statements to law enforcement officers. If Paul can allege these facts in good faith, he is entitled to amend the complaint.
Gina argues that to permit such an amendment would be to grant Paul "license ... to conduct some sort of fishing expedition" to investigate whether Gina has ever made any false statements about Paul to third parties. However, if Paul does not have facts to support his claim that Gina made such false statements to third parties, he may not properly amend the pleading. Knowingly pleading facts that are factually unsupported may subject the parties and/or counsel to punishment for perjury, sanctions, or professional disciplinary action. We further emphasize that even if Paul properly amends the complaint to allege non-privileged statements to third parties, Paul will not be entitled to recover damages resulting from the allegedly false police report or the ensuing criminal proceeding. Instead, any recoverable damages are limited to injuries flowing from any false statements Gina made to these third parties.

II. Summary Judgment[*]

DISPOSITION
We affirm the judgment on the malicious prosecution claim. We reverse the portion of the judgment relating to the defamation and intentional infliction of emotional distress claims. We order the court to vacate its order granting the demurrer and instead grant Paul leave to amend the complaint. The parties to bear their own costs on appeal.
WE CONCUR: NARES, Acting P.J., and O'ROURKE, J.
NOTES
[1] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II of the Discussion section.
[2] For convenience, we refer to the parties by their first names.
[3] All further statutory references are to the Civil Code unless otherwise specified.
[4] Although Devis purported to follow Williams, the Devis court suggested in dicta the privilege applies only to "good faith" reports to police. (Devis, supra, 65 Cal.App.4th at p. 1008, 77 Cal.Rptr.2d 238.) The court, however, did not explain the seeming inconsistency in its reasoning. We note that the California Supreme Court has recognized the conflict between Williams and Fenelon, but has thus far declined to express an opinion on the issue. (Lubetzky v. State Bar (1991) 54 Cal.3d 308, 317, fn. 7, 285 Cal.Rptr. 268, 815 P.2d 341.)
[*] See footnote 1, ante.