**In re Kari Ann PECK, Debtor.**

**Adrian Maaskant, Appellant,**

v.

**Kari Ann Peck, Appellee.**

**BAP No. EC–02–1600–RyBJ.**
**Bankruptcy No. 01–11815–B–7.**
**Adversary No. 01–01125–D.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 20, 2003.

Memorandum Filed—May 6, 2003.

Opinion Filed—July 10, 2003.

Adrian Maaskant, Tehachapi, CA, Pro se Appellant.

Frank P. Samples, Bakersfield, CA, for Kari Ann Peck.

Before: RYAN, BRANDT and JURY,[1] Bankruptcy Judges.

1. Hon. Meredith A. Jury, Bankruptcy Judge for the Central District of California, sitting by designation.

*OPINION*

RYAN, Bankruptcy Judge.

After Kari Ann Peck ("Debtor") filed a chapter 7[2] petition, Adrian Maaskant filed a complaint (the "Complaint") to declare a certain debt Debtor owed to him nondischargeable pursuant to § 523(a)(6).

After a trial, the bankruptcy court entered an order (the "Order") in favor of Debtor on the § 523(a)(6) claim. Maaskant then timely appealed.

We REVERSE and REMAND.

## I. FACTS

From 1995 to 1999, Debtor rented property (the "Property") from Maaskant in Kern County, California, where she lived with her five children. On several occasions, Maaskant reduced or forgave portions of the rent when Debtor had financial difficulties.

Maaskant is a teacher in the Kern High School District. His wife, Ria Maaskant, is the principal of Monroe High School in the Tehachapi Unified School District. Because of his role as a teacher, Maaskant enjoys working with children. Occasionally, Maaskant took some of Debtor's children for ice cream and sailing trips to a local lake. During one summer prior to 1999, Maaskant took Kamira and Briona, Debtor's daughters, and Shayna Miller, the daughters' friend, to a local lake on a sailing trip.

In August 1999, Maaskant requested Debtor to leave the Property after she failed to pay rent for several months. Shortly prior to Debtor's eviction, she approached June Palmer, her neighbor, and asked Palmer's granddaughter to accuse Maaskant of child molestation. Debtor also told Palmer that she planned to have her children accuse Maaskant of molestation so that he would not remove her from the Property. Palmer's granddaughter refused to lie for Debtor. Subsequently, in December 1999, Debtor vacated the Property.

About two weeks after Debtor left the Property, she told Stephanie M. Corey, her former neighbor, that Maaskant molested Kamira during a sailing trip.[3] According to Mrs. Corey, Debtor indicated that "[Kamira] was up with her privates in [Maaskant's] face." Tr. of Proceedings (Oct. 17, 2002), at 45. After hearing about the molestation, Mrs. Corey mentioned it to William J. Corey, her husband.[4]

On the next day, Debtor returned to the Coreys' residence and told Mr. Corey about the alleged molestation. Further, Debtor told Mr. Corey that she would "get [Maaskant] back one way or another" for evicting her from the Property. Tr. of Proceedings (Oct. 17, 2002), at 59. Although Mr. Corey indicated that he did not believe Debtor's statement, he called Maaskant on the same day and told him about the molestation accusation. Mr. Corey did not disclose the accusation to anyone other than Maaskant.

Immediately, Maaskant and his wife went to the local sheriff's station to assert their innocence.[5] This apparently trig-

---

**2.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

**3.** Debtor told Mrs. Corey that she did not witness the molestation herself. Rather, Kamira "had finally come out and told her." Tr. of Proceedings (Oct. 17, 2002), at 48.

**4.** Unless otherwise indicated, Stephanie and William Corey will be collectively referred to as the "Coreys."

**5.** According to Maaskant, he went to the sheriff's station because he thought that Debtor had already filed molestation charges against him. However, no report had been filed against Maaskant at that time.

gered an investigation by the sheriff, who approached Debtor and asked her about the alleged child molestation. In response, Debtor filed a crime report with the Kern County Sheriff's Department, charging Maaskant for his lewd and lascivious acts. After the sheriff's investigation, no charges were brought against Maaskant.

Both Maaskant and his wife informed their employers of the molestation accusation. According to Maaskant, he wanted his colleagues at the Kern High School district office to know about the accusation before it became public. Likewise, Ria wanted to prepare her employer for the possible rumors that would reach the school district office.[6] Further, she felt a need to contradict the accusation because "it hits at the core of who [they] are as human being[s]." Tr. of Proceedings (Oct. 17, 2002), at 73.

In November 2000, Maaskant filed a state court complaint (the "State Action") against Debtor[7] for: (1) malicious prosecution of the molestation action; (2) slander regarding Maaskant's molestation of Kamira; (3) intentional infliction of emotional distress; and (4) breach of the rental agreement.[8] According to Maaskant, Debtor initiated the molestation action to retaliate after he removed Debtor from the Property.

In response, in March 2001, Debtor filed a chapter 7 petition. Maaskant was listed as one of two creditors in Debtor's sched-ules with an "unliquidated" and "disputed" claim of $130,000.[9]

Maaskant then filed the Complaint, alleging that Debtor made a false report to the sheriff that he had molested her daughter. Further, Maaskant claimed that Debtor slandered him by telling others in the neighborhood of the alleged molestation. As a result, Maaskant argued that his reputation was damaged, and he suffered emotional distress. Because Debtor caused a "willful and malicious injury" to Maaskant, he sought to declare a debt (the "Debt") that the court "may deem just and proper" nondischargeable pursuant to § 523(a)(6).

Debtor answered the Complaint by denying all accusations. According to Debtor, after Kamira told her about the molestation, she "reported to the Kern County Sheriff as required by law." Answer of Defendant (Jul. 16, 2001), at 1. Debtor claimed that she did not knowingly make a false report, nor did she intend to damage Maaskant's reputation or cause him emotional distress.

At trial, Debtor did not appear. Maaskant testified that he never touched Kamira sexually. After working in the school for thirty years, Maaskant indicated that he has never been accused of any improper sexual conduct with his students.

Maaskant also testified that he obtained Debtor's permission before taking Kamira on the sailing trip at issue. Further, after the alleged molestation occurred, Maaskant took Kamira on another sailing trip.

---

6. In fact, Ria indicated that Briona was a student at her school, and Briona had spread the accusation to at least one truant officer of the school.

7. Maaskant also filed the state complaint against Kamira and Jerry Baird, Debtor's former husband, who was present at the time Debtor told Mrs. Corey about the alleged molestation.

8. It is unclear from the appellate record ("Record") whether Debtor filed an answer to the state complaint.

9. It is unclear from the Record how Debtor determined the $130,000 amount.

At no time prior to Debtor's eviction did she tell Maaskant to stop spending time with her children.

Although the bankruptcy court acknowledged that Maaskant's concerns were genuine, it did not find the accusation to be damaging because it "[did not] know why people would believe these things [the accusations]." Tr. of Proceedings (Oct. 18, 2002), at 80. In any event, the court indicated that it was simply "human nature in terms of willingness to gossip and willingness to think the worst of people without any credible support for it." *Id.* at 81.

The court also questioned the appropriateness of Maaskant's conduct:

Maybe it was inappropriate for a school teacher to be taking three young girls out unchaperoned on a boat. I don't know. That's something that's a matter of community observation and community consideration.

*Id.* at 81.

The court did not determine whether the molestation statement was false. Nonetheless, it found for Debtor on the § 523(a)(6) claim because it held that Debtor did not injure Maaskant:

The only direct testimony as to allegations is that [Debtor] made statements to Mrs. Corey and to Mr. Corey. There's no evidence that she made statements of specific conduct regarding [Maaskant] to anyone else, and [Debtor] didn't say what she observed, [Debtor] said what she was told. And unfortunately, we don't know if what she was told was the truth, if she was honestly told that. There has certainly been a suggestion that [Debtor] made it up. But I'm not able to find on the facts

here that that [sic], in fact, is what happened.

I don't know what [Debtor's] purpose would have been in telling the neighbors next door. She apparently did make the statements to [the Coreys] ... But that's the only evidence that there is against [Debtor] here, that she told two people.

. . . .

So what we have, essentially, is someone saying what someone told them, and then other people spreading that message.

Mr. Maaskant has said if he hadn't contacted the sheriff, it's possible they would not have known about it ....

. . . .

The main damage here—both Mr. and Mrs. Corey, at least Mr. Corey, said they didn't believe at all what she said. They were concerned about the fact that she had said it to them. They didn't testify that she told them she was going to tell a lot of other people.

. . . .

Unfortunately, to the extent that this has affected Mr. Maaskant's reputation, it seems that the broadcast of this information really comes from Mr. Maaskant reporting it.

Again, I certainly understand the reaction of Mr. and Mrs. Maaskant, but I can't really make a finding, based on the evidence, that all of this was the work of [Debtor] ....

Tr. of Proceedings (Oct. 17, 2002), at 76–79.

After the court entered the Order, Maaskant timely appealed.[10]

---

**10.** Maaskant did not proceed in the State Action against Debtor after she filed the chapter 7 petition. As a result, Debtor requested that Maaskant dismiss the State Action or otherwise she would file a § 524 action against him. Thereafter, in February 2003, Maaskant filed a second emergency motion for a stay pending appeal, which we granted.

## II. ISSUE

Whether the bankruptcy court erred in finding for Debtor on the § 523(a)(6) claim.

## III. STANDARD OF REVIEW

■ "[W]e review de novo whether a particular type of debt is nondischargeable as a willful and malicious injury under § 523(a)(6)." *Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa)*, 258 B.R. 192, 195 (9th Cir. BAP 2001).

■ We review the bankruptcy court's determinations of fact for clear error. *See Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116, 1120 (9th Cir.2000).

## IV. DISCUSSION

*The Bankruptcy Court Erred in Finding For Debtor on the 523(a)(6) Claim.*

The court found for Debtor on the issue of nondischargeability.[11] On appeal, Maaskant contends that the court erred because he was slandered by Debtor. Further, Maaskant claims that the court erred because it should have entered a "default judgment" against Debtor because she did not appear at trial.[12]

**11.** In the Order, the court did not explicitly hold that the Debt was dischargeable. Rather, it stated that it "render[ed] judgment in favor of [Debtor]" in the Complaint to determine dischargeability of debt. Civil Minute Order (Oct. 18, 2002), at 1. Because dischargeability of the Debt was the only issue in the Complaint, the court must necessarily have concluded that the Debt was dischargeable.

**12.** On appeal, Maaskant further argues that Judge Dorian "formed his ruling before the trial took place ...." Appellant's Opening Brief (Jan. 22, 2003), at 38. We reject this argument because there is nothing in the Record to support Maaskant's contention. Fur-

### 1. Default Judgment

Rule 7055 makes Federal Rule Civil Procedure ("FRCP") 55 applicable in bankruptcy cases. FRCP 55(b) provides for a default judgment:

> (2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor .... If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application ....

FED. R. CIV. PROC. 55(b)(2).

■ Here, Maaskant did not apply for a default judgment before the bankruptcy court. Therefore, he is not entitled to one. *See* FED. R. CIV. PROC. 55(b)(2). Further, this argument is waived because Maaskant did not raise the default issue before the court. *See Holder v. Holder*, 305 F.3d 854, 867 (9th Cir.2002) ("Arguments not asserted in the trial court are waived and will not be considered for the first time on appeal.").

### 2. Slander

■ An action for slander is to protect the personal reputation of the injured par-

ther, Maaskant has not provided us with any basis for his argument.

In addition, Maaskant contends that the court "criticiz[ed] [him] for not presenting as evidence the Deposition of [Debtor]." *Id.* at 41. We also reject Maaskant's contention because the Record is clear that the court did not criticize Maaskant for his failure to provide Debtor's deposition. It merely stated:

> I don't know if—you made some reference to a deposition of [Debtor] and none of that was used here. I don't know if that was a deposition in this case or in some other matter.

Tr. of Proceedings (Oct. 17, 2002), at 76.

ty. *See Polygram Records, Inc. v. Superior Court*, 170 Cal.App.3d 543, 549, 216 Cal.Rptr. 252 (Cal.Ct.App.1985). California Civil Code ("CCC") § 46 defines slander as "a false and unprivileged publication, orally uttered ... which: (1)[c]harges any person with crime, or with having been indicted, convicted, or punished for crime ...." CAL. CIV. CODE § 46(1).[13]

▮ "Words which fall within the purview of Civil Code section 46 are deemed to constitute slander per se," *Albertini v. Schaefer*, 97 Cal.App.3d 822, 829, 159 Cal. Rptr. 98 (Cal.Ct.App.1979), and "a cause of action for actual or compensatory damages is conclusively established." *Clark v. McClurg*, 215 Cal. 279, 284, 9 P.2d 505 (1932). Damage to one's reputation is also presumed from a false charge of a crime. *See Allard v. Church of Scientology of California*, 58 Cal.App.3d 439, 450, 129 Cal.Rptr. 797 (Cal.Ct.App.1976).

▮ For purpose of the law of slander, "publication" does not require dissemination to a substantial number of individuals. Rather, it is sufficient that the slander "is communicated to a single individual other than the one defamed." *Lundquist v. Reusser*, 7 Cal.4th 1193, 1203, 31 Cal.Rptr.2d 776, 875 P.2d 1279 (1994) (citation omitted). Further, "[i]t is not necessary that anyone believe [the defamatory statement] to be true, since the fact that such words are in circulation at all concerning the plaintiff must be to some extent injurious to his reputation." *Arno v. Stewart*, 245 Cal.App.2d 955, 963, 54 Cal.Rptr. 392 (Cal.Ct.App.1966). Finally, "[w]hen one person repeats another's defamatory statement, he may be held liable for republishing the same ... slander." *Frommoethelydo v. Fire Ins. Exch.*, 42 Cal.3d 208, 217, 228 Cal.Rptr.

160, 721 P.2d 41 (1986); *see also Khawar v. Globe Int'l, Inc.*, 19 Cal.4th 254, 268, 79 Cal.Rptr.2d 178, 965 P.2d 696 (1998).

Here, the court suggested that Debtor did not slander Maaskant because she disclosed the molestation statement only to the Coreys and that she merely repeated what Kamira told her. In addition, the court held that the "main damage" to Maaskant's case was the fact that the Coreys did not believe Debtor's statement.

As stated above, the molestation statement was slander if it was: (1) orally uttered; (2) unprivileged; (3) false; and (4) charged Maaskant with a crime. *See* CAL. CIV. CODE § 46(1).

### a. Oral Utterance

Clearly, Debtor orally uttered the molestation statement. Prior to her eviction, Debtor told Palmer of her intention to accuse Maaskant of child molestation. Then, after she was removed from the Property, Debtor told the Coreys that Maaksant molested Kamira. Finally, after the local sheriff approached Debtor, she charged Maaskant with child molestation.

### b. Privileged Publication

CCC § 47 provides for a list of privileged publication:

A privileged publication ... is one made:

(a) In the proper discharge of an official duty.

(b) In any (1) legislative proceeding, (2) judicial proceeding; (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law ....

....

*Bino v. Bailey (In re Bailey)*, 197 F.3d 997, 1000 (9th Cir.1999).

---

**13.** We discuss California law because the alleged slander occurred in California. *See Del*

(c) In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information....

(d)(1) By a fair and true report ... of (A) a judicial, (B)legislative, or (C) or other public official proceeding ....

....

(e) By a fair and true report of (1) the proceedings of a public meeting ... or (2) the publication of the matter complained of was for the public benefit.

CAL. CIV. CODE § 47(a)-(e).

▬▬▬▬ "[C]ommunications designed to prompt a criminal prosecution directed to an official governmental agency empowered to commence criminal prosecutions are absolutely privileged as publications made in an official proceeding" under CCC § 47(b). *Passman v. Torkan,* 34 Cal. App.4th 607, 619, 40 Cal.Rptr.2d 291 (Cal. Ct.App.1995) (holding that the defendant's defamatory statements about the plaintiff to the district attorney's office was absolutely privileged); *see also Hunsucker v. Sunnyvale Hilton Inn,* 23 Cal.App.4th 1498, 1504, 28 Cal.Rptr.2d 722 (Cal.Ct.App. 1994) (holding that the defendant's communication to the police was absolutely privileged). "The malice or malevolent purpose of the defamer is of no consequence if the [communication] is absolutely privileged." *Lundquist,* 7 Cal.4th at 1206 n. 12, 31 Cal.Rptr.2d 776, 875 P.2d 1279. (citation omitted).

▬▬▬ Here, Debtor's report to the local sheriff about Maaskant's molestation was absolutely privileged under CCC § 47(b). *See Hunsucker,* 23 Cal.App.4th at 1504, 28 Cal.Rptr.2d 722. Debtor is immune even if she intentionally filed a false report with the sheriff. *See Lundquist,* 7 Cal.4th at 1206 n. 12, 31 Cal.Rptr.2d 776, 875 P.2d 1279.

▬▬▬ However, Debtor's communications to the Coreys and Palmer were not privileged because they did not fit within a category under CCC § 47. *See* CAL. CIV. CODE § 47(a)-(e). Debtor did not appear at trial, nor did she argue on appeal that her statement was privileged. Therefore, the issue is waived. *See Brooks v. City of San Mateo,* 229 F.3d 917, 922 n. 1 (9th Cir.2000) ("On appeal, arguments not raised by a party in its opening brief are deemed waived") (citation omitted).

c. Crime

California Penal Code § 288 provides that any lewd or lascivious acts involving children are criminal acts:

(a) Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six or eight years.

CAL. PEN. CODE § 288(a)

Therefore, child molestation is a crime in California. *See* CAL. PEN. CODE § 288. Undisputedly, Kamira was under fourteen years old at the time of the alleged molestation.

As such, Debtor "charged Maaskant with a crime" when she told the Coreys about the alleged molestation. *See* CAL. PEN. CODE § 288(a).

### d. Falsity of Debtor's Statement

 Here, the court did not determine that the molestation statement was false. However, our review of the Record clearly indicates that the statement was false.

Initially, we note that Maaskant is prominent in his community. Maaskant is the president of a local political group called the "Concerned Citizens of Golden Hills." He is also a teacher who spends his career working with children. After thirty years of working in the school, he has never been accused of sexual molestation. Further, Maaskant has no criminal record.

Consistent with his role as a teacher, Maaskant enjoys working with children. According to him, he developed a positive friendship with Debtor's children. Debtor is a single mom living with five children. As a result, Maaskant found himself as a "father figure" to Debtor's children. Tr. of Proceedings (Oct. 17, 2002), at 35. Maaskant took the children for ice cream and let them play. He also helped Kamira develop an interest in reading by taking her to a bookstore and buying her a book. From time to time, he took Debtor's children for sailing trips.

Over the period of these outings, Debtor has never asked Maaskant to stop spending time with her children prior to her eviction in December 1999. Further, prior to December 1999, Debtor never even suggested that Maaskant's conduct was improper. In fact, Debtor permitted the sailing trip at issue.

Maaskant himself testified that he did not molest Kamira. According to Maaskant, Kamira never cried during their trips or asked to be taken back to Debtor. Rather, she "really enjoyed it thoroughly . . . [and] always wanted to extend the trip rather than shorten it." Tr. of Proceedings (Oct. 17, 2002), at 10.

The Record is also clear that when Debtor was requested to leave the Property in August 1999, she went to Palmer to have Palmer's granddaughter provide a false verification that molestation had occurred. Debtor also indicated that she planned to have her children accuse Maaskant of molestation so she could remain on the Property. It was only after Palmer's granddaughter refused to lie that Debtor told the Coreys about the molestation.

After learning about the accusation, Maaskant immediately reported to the local sheriff's station to assert his innocence. In light of the seriousness of the accusation, it was reasonable for Maaskant to contact the sheriff. In fact, the court found that Maaskant acted reasonably:

> I can appreciate that, given the seriousness of this kind of a charge and the impact it can have on someone's career that works with children, that it may have been appropriate for [Maaskant] to [contact the sheriff].

Tr. of Proceedings (Oct. 17, 2002), at 77.

Viewing all the evidence before us, we can only conclude that the molestation statement was false.[14] Debtor did not ap-

---

**14.** On appeal, Maaskant attached to his reply brief a deposition of Richard C. Wood, who is the deputy sheriff of Kern County. According to Wood, Kamira eventually admitted that Maaskant did not molest her. Kamira also admitted that she fabricated the accusation herself because "she believed it would help her family [from being evicted] at that time." Deposition of Richard C. Wood (Dec. 18, 2001), at 7–8.

However, because this was not presented at trial, we cannot consider this evidence. *See Harkins Amusement Enters. Inc. v. General Cinema Corp.*, 850 F.2d 477, 482 (9th Cir. 1988) (stating that an appellate court is limited to the record presented before a trial court).

pear at trial to rebut Maaskant's denials of the veracity of the molestation statement. Therefore, there is no evidence in the Record to show that the molestation statement is true.

Accordingly, because all the elements of CCC § 46 are satisfied, Debtor slandered Maaskant when she told the Coreys about the molestation.

The fact that the statement was communicated only to the Coreys does not change the outcome. *See Lundquist*, 7 Cal.4th at 1203, 31 Cal.Rptr.2d 776, 875 P.2d 1279. Even assuming that Kamira made the false accusation to Debtor, the republishing of the false accusation by Debtor is enough to constitute slander. *See Khawar*, 19 Cal.4th at 268, 79 Cal.Rptr.2d 178, 965 P.2d 696. Finally, the court erred because it was not necessary for the Coreys to believe Debtor's statement for there to be slander. This is because "the fact that such words are in circulation at all concerning [Maaskant] must be to some extent injurious to his reputation." *Arno*, 245 Cal.App.2d at 963, 54 Cal.Rptr. 392.

As discussed above, Debtor slandered Maaskant when she told the Coreys about the molestation. Therefore, the court erred in not finding the molestation statement slanderous.

### 3. 11 U.S.C. § 523(a)(6)

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

■ A willful injury under § 523(a)(6) requires a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). "[T]he (a)(6) formulation triggers in the lawyer's mind the cate-

gory 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'" *Id.* at 61–62, 118 S.Ct. 974 (emphasis and citation omitted).

In *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202 (9th Cir.2001), the plaintiff was employed by a real estate company owned by the debtor. The plaintiff was not promptly paid his salary or commissions. He then sued the debtor in state court and obtained a judgment. After the debtor filed a chapter 7 petition, the plaintiff brought a dischargeability action under § 523(a)(6). The bankruptcy court held that the debt was dischargeable because there had been no finding by the state court that the debtor acted with a specific intent to injure the plaintiff. On appeal, we affirmed on other grounds. *Id.* at 1204.

On further appeal, the Ninth Circuit reversed, holding the debt nondischargeable. *Id.* at 1209. In so doing, the *Jercich* court held that "the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." *Id.* at 1208.

■ In *Carrillo v. Su (In re Su)*, 290 F.3d 1140 (9th Cir.2002), the Ninth Circuit reaffirmed *Jercich* and held that the willful injury requirement under § 523(a)(6) is met "only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Id.* at 1142. "The subjective standard correctly focuses on the debtor's state of mind and precludes application of § 523(a)(6)'s nondischargeability provision short of the debtor's actual knowledge that harm to the

creditor was substantially certain." *Id.* at 1146.

█ The Ninth Circuit also held that the malicious prong was separate and distinct from the willful prong of § 523(a)(6). "A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Jercich,* 238 F.3d at 1209 (citations and internal quotation marks omitted).

█ Here, the court found for Debtor on the § 523(a)(6) claim because it held that Debtor did not injure Maaskant. To the contrary, the court found that Maaskant caused his own injury: "to the extent that [the molestation accusation] has affected Mr. Maaskant's reputation, it seems that the broadcast of this information really comes from Mr. Maaskant reporting it." Tr. of Proceedings (Oct. 18, 2002), at 78. We disagree.

As discussed above, Debtor slandered Maaskant through her molestation accusation. Because Debtor falsely charged Maaskant with a crime of child molestation, the statement is slander per se. *See Albertini,* 97 Cal.App.3d at 829, 159 Cal. Rptr. 98. Therefore, injury to Maaskant's reputation is presumed. *See Allard,* 58 Cal.App.3d at 450, 129 Cal.Rptr. 797. Accordingly, the court clearly erred in finding that Debtor did not injure Maaskant.

The remaining issue is whether Debtor "willfully and maliciously" injured Maaskant within the meaning of § 523(a)(6). *See Su,* 290 F.3d at 1142.

### a. Willful Injury

█ During trial, Mrs. Corey testified that Debtor told her about the molestation after Debtor heard it from Kamira. This factor, if true, would support a lack of subjective intent on Debtor's part to injure Maaskant because she was merely repeating what she was told. However, according to Palmer, Debtor wanted her granddaughter and Debtor's children to accuse Maaskant of molestation so that she could remain in the Property. This would indicate that Debtor knew of the falsity of the molestation accusation. In addition, Mr. Corey testified that Debtor said that "she'll get [Maaskant] back one way or another" for evicting her from the Property. Tr. of Proceedings (Oct. 18, 2002), at 59. This testimony supports a finding that Debtor subjectively intended to injure Maaskant in order to "get back" at him for removing her from the Property.

Debtor did not appear at trial to rebut this evidence. Therefore, there is no evidence in the Record to offset Debtor's intention to harm Maaskant.

Further, the court found the witnesses' testimony to be credible.[15] As a result, based on the evidence before us, the court erred in not finding that Debtor intentionally slandered Maaskant. Accordingly, Debtor willfully injured Maaskant within the meaning of § 523(a)(6). *See Su,* 290 F.3d at 1143.

### b. Malicious Injury

█ Similarly, the Record reveals that Debtor acted maliciously within the meaning of § 523(a)(6). As stated above, Debtor subjectively intended to slander Maaskant with the molestation accusation. Because of the seriousness of the crime, the accusation would "necessarily cause[ ] injury" to Debtor. *See Jercich,* 238 F.3d at 1209. This is especially true because Maaskant is a teacher whose career is working with children. In fact, we presume that Maaskant suffered damage to

---

**15.** On appeal, Debtor did not object to the witnesses' credibility. Therefore, the issue is waived. *See Brooks,* 229 F.3d at 922 n. 1 (9th Cir.2000).

his reputation. *See Allard,* 58 Cal.App.3d at 450, 129 Cal.Rptr. 797. On appeal, Debtor did not provide any legitimate reason for slandering Maaskant. Therefore, Debtor acted maliciously within the meaning of § 523(a)(6). *See Jercich,* 238 F.3d at 1209.

Because Debtor acted both willfully and maliciously, the court erred in finding for Debtor on the § 523(a)(6) claim.

#### 4. Damages

 Maaskant requested in the Complaint for "all relief the Court deem [sic] just and proper." Complaint to Determine Dischargeability of Debt (May 24, 2002), at 3. To the extent Maaskant based his § 523(a)(6) claim on a slander action, we will liberally construe the Complaint to provide Maaskant with all damages that flow from it.

As discussed above, actual or compensatory damages are presumed in matters of slander per se. *See Clark,* 215 Cal. at 284, 9 P.2d 505. Actual damages are "compensatory damages [that] include nonquantifiable general damages for emotional distress and pecuniarily measurable special damages for out-of-pocket losses." *Konig v. Fair Employment and Housing Comm'n,* 28 Cal.4th 743, 748, 123 Cal. Rptr.2d 1, 50 P.3d 718 (2002) (citation omitted).

##### a. Out-of-Pocket Losses

During trial, Maaskant indicated that after he learned about the molestation accusation, he hired an attorney and a private investigator to investigate the slander action. As a result, Maaskant incurred attorney's fees.

##### b. Emotional Distress Damages

Once slander per se is established, a plaintiff is entitled to "damages for injury to his feelings, including mental worry, distress, grief, and mortification." *Douglas v. Janis,* 43 Cal.App.3d 931, 940, 118 Cal.Rptr. 280 (Cal.Ct.App.1974) (citation omitted). However, while emotional distress should be taken into account in determining damages in a slander cause of action, "it does not give rise to an independent cause of action on the theory of a separate tort." *Grimes v. Carter,* 241 Cal. App.2d 694, 702, 50 Cal.Rptr. 808 (Cal.Ct. App.1966).

Under California law, the elements of the tort of intentional infliction of emotional distress are:

(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Christensen v. Superior Court,* 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991) (citation omitted). Conduct is deemed to be outrageous if it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (citation omitted).

Here, Debtor willfully and maliciously intended to slander Maaskant with a charge of child molestation. This is outrageous conduct because Debtor completely disregarded the fact that it would be extremely devastating to charge someone like Maaskant for child molestation when he spends his entire career working with children. As such, the conduct is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* Because of the seriousness of the crime, Debtor acted with reckless disregard of the probability of causing emotion-

al distress to Maaskant when she falsely charged Maaskant with child molestation.

The Record is also clear that Debtor's conduct caused Maaskant significant distress. For example, Maaskant testified that, as a result of the accusation, he became "very uncomfortable with having individual students in [his] classroom." Tr. of Proceedings (Oct. 17, 2002), at 24. Maaskant also indicated that he "shed many tears" and that the experience was "painful." *Id.* at 26. Further, Maaskant testified that he was afraid that "[the] accusation could affect [his] license to carry on [his] profession." *Id.* at 25.

Maaskant also testified that he "made it a point to become far less public" because he "felt that the embarrassment and shame and humiliation of [the] accusation would travel around [the community]." Tr. of Proceedings (Oct. 18, 2002), at 23; *see also* Tr. of Proceedings (May 23, 2002), at 8. In fact, Maaskant felt that he lost standing with some members in his local community after the accusation had spread.[16] Nonetheless, the court did not make a finding on the severity or extremity of Maaskant's distress.

## V. CONCLUSION

The bankruptcy court erred in finding for Debtor on the § 523(a)(6) claim. The Debt is nondischargeable, and we remand to the court and leave to its discretion whether to hear evidence on damages or relegate the parties to the State Action for that determination.

REVERSED and REMANDED.

---

**16.** According to Maaskant, he went to lunch with a colleague, and a man in the restaurant stared at Maaskant and "look[ed] like he [was] angry with [him]." Tr. of Proceedings (Oct. 17, 2002), at 27. It turned out that the man was the vice principal of another local high school in Maaskant's neighborhood. Maaskant felt that the man looked at him angrily because of the molestation rumors.